UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
UNITED STATES OF AMERICA,

                                                         **OPINION AND ORDER**

         - v -

                                                         MJ-11-1217 (VVP)

LINO ARDINES,
                Defendant.
------------------------------------------------------------x

        The defendant has moved to dismiss one of the charges against him and to suppress certain evidence. The court heard argument on the motions on April 3, 2012 and determined that an evidentiary hearing was required with respect to one aspect of the motion to suppress, but withheld rulings on the motion to dismiss and other aspects of the motion to suppress. This opinion addresses the open issues.

## I. THE MOTION TO DISMISS

        The defendant seeks to dismiss the charge of attempted criminal possession of stolen property in the fifth degree, as defined in sections 110 and 165.40 of the New York Penal Law, on the grounds that this state law crime may not be charged pursuant to the Assimilative Crimes Act, 18 U.S.C. § 13. In essence, the defendant's argument rests on the proposition that the government may not rely on a state criminal statute, through the Assimilative Crimes Act, when there are federal statutes that provide criminal penalties for the same conduct as that defined in the state statute in question.

        The parties agree that the Supreme Court's opinion in *Lewis v. United States*, 523 U.S. 155 (1998), provides the two-step test for determining the issue. The first step requires the court to ask whether the defendant's act or omission is made punishable by any act of

Congress. *Id.*, 523 U.S. at 164. If the answer is "no," then the Assimilative Crimes Act may be used to import any applicable state law. If the answer is "yes," the court moves to the second step which requires the court to determine whether the applicable federal statutes preclude application of the state law for any one of three reasons: "because its application would interfere with the achievement of a federal policy, . . . because the state law would effectively rewrite an offense definition that Congress carefully considered, . . . or because federal statutes reveal an intent to occupy so much of a field as would exclude use of the particular state statute at issue." *Id.* (citations omitted).

Turning to the first step, the court concludes that although three federal statutes criminalize conduct somewhat related to the conduct criminalized by the state statute in question, there remain gaps that the state statute fills. The state statute under which the defendant is charged here reads, in pertinent part,

> A person is guilty of criminal possession of stolen property in the fifth degree when he knowingly possesses stolen property, with intent to benefit himself or a person other than an owner thereof or to impede the recovery by an owner thereof.

N.Y. Penal L. § 165.40.[1] To prove the crime, then, the government need only establish that the defendant knowingly possessed stolen property with the intent to deprive the owner of it.

Each of the federal statutes that the defendant cites in support of his argument requires something more than simple possession of stolen property, and thus none of them punish the same wrongful behavior as that covered by the state law whose violation is charged here. In his initial moving papers, the defendant cites section 641 of title 18, United

---

[1] The defendant is charged with an attempt to commit this offense.

States Code, which provides criminal penalties for anyone who "receives, conceals, or retains" "any record, voucher, money, or thing of value of the United States." 18 U.S.C. § 641. The government properly points out, however, that this statute applies only if the stolen property belongs to the government, an additional element that the state law does not require.

The two other sections of the United States Code cited by the defendant in support of his argument that federal statutes cover the offense charged here under the Assimilative Crimes Act each apply solely to conduct committed within the special maritime and territorial jurisdiction of the United States.[2] Section 661 provides criminal penalties for "[w]hoever, within the special maritime and territorial jurisdiction of the United States, takes and carries away, with intent to steal or purloin, any personal property of another." 18 U.S.C. § 661. A successful prosecution under the statute, by its specific terms, requires proof that the defendant engaged in the acts of taking and carrying away property while within the special maritime and territorial jurisdiction of the United States; simply possessing stolen property there is not enough. Thus, a defendant who "takes" and "carries away" stolen property somewhere outside the special maritime and territorial jurisdiction of the United States could not be prosecuted for merely possessing that stolen property within the jurisdiction. Similarly, the crimes defined in section 662 do not cover simple possession of stolen property within the special maritime and territorial jurisdiction of the United States.

---

[2] The term "special maritime and territorial jurisdiction of the United States" is defined in 18 U.S.C. § 7, and corresponds in large part to the territorial application of the Assimilative Crimes Act.

18 U.S.C. § 662. That statute applies to a defendant who "buys, receives, or conceals" stolen property within that area. It would not apply to a defendant who has bought, received or concealed stolen property outside the jurisdiction, and simply possessed the property within the jurisdiction. The court concludes, then, that these two sections, like section 641, apply to conduct different from that covered by the state law under which the government seeks to proceed here.

In addition, it is worth noting that none of the federal statutes cited by the defendant criminalize attempts to commit the crimes defined by those laws. As the government has charged the defendant here with the attempted possession of stolen property, citing section 110 of the New York Penal Law, and as no provision of federal law provides criminal punishment for such conduct, there exists yet another gap for state law to fill.

Because the answer to the first step in the *Lewis* analysis is "no," there is no bar to the use of the Assimilative Crimes Act to apply state law to the conduct charged against the defendant. Even if the court were to conclude otherwise, however, the answer would be the same, for the defendant's motion also fails the second step of the *Lewis* analysis. The defendant points to no federal policy that would be impeded by application of state law. Nor is there any evidence that Congress carefully considered and rejected the offense definition set out in the state law. And there is no indication of any intent by Congress to "occupy so much of the field" as to exclude use of the state statute at issue here. *See Lewis*, 523 U.S. at 164-66.

In evaluating the state law in question here as part of the second step in the *Lewis* analysis, the court notes the Supreme Court's admonition that the ultimate question to be answered in the second step is, "Does applicable federal law indicate an intent to punish conduct such as the defendant's to the exclusion of the particular state statute at issue?" *Id.*, 523 U.S. at 166. Nothing in the three statutes cited by the defendant indicates any such intent. Each of the three statutes makes but one distinction concerning the value of the property that is protected by them: offenses involving property with a value in excess of $1,000 are treated as felonies punishable by imprisonment exceeding one year, while offenses involving property with a value of $1,000 or less are treated as misdemeanors punishable by imprisonment of up to one year. Permitting the government to adopt state law through the Assimilative Crimes Act provides additional flexibility to bring the less serious charge of attempted possession of stolen property, an offense which carries a maximum term of imprisonment of but three months. *See* N.Y. Penal Law §§ 110.05, 70.15(2). That flexibility offers considerable benefit to both the prosecution and the defendant, particularly where the value of the property involved is considerably less than $1,000 as it appears to be here. In such a case the prosecution would not be required to bring a charge that carries sentencing exposure of up to one year, and the defendant would not have to face possible punishment of up to one year. Where the property value is low, the lesser charge would more accurately reflect the relative seriousness of the offense. Moreover, being able to bring the lesser charge would spare the government and the court the burden and expense of conducting a jury trial

for even the most minor theft.³  Nothing in the federal statutes suggests that such flexibility would be undesirable.

The downward charging flexibility employed by the government here is distinguishable from the attempt at upward charging under the Assimilative Crimes Act rejected by the Supreme Court in *Lewis*.  There, the government sought to enhance the punishment that could be imposed on a defendant for a murder by charging the defendant with first-degree murder under state law, when federal law classified the offense as second-degree murder.  The Court's approach in *Lewis* is particularly instructive.  Unlike here, there was no dispute in that case that both the federal and the state law covered the conduct charged.  The court thus moved to the second step of the inquiry and engaged in a detailed analysis of the legislative history that accompanied the enactment of the federal murder statute, examining the text of the federal murder statute in detail as well as the various adjustments Congress had made in drawing the line between first- and second-degree murder.  The Court noted the specificity with which Congress defined the variants of murderous conduct that were placed in the category of first-degree murder.  Only after determining from that examination that Congress had carefully decided to cover the full range of behavior punishable by the federal murder statute did the Court conclude that there was no gap in the federal law for the state statute to fill.

---

³Because each of the federal statutes cited by the defendant carry terms of imprisonment of up to one year for the misdemeanor offenses they define, prosecutions under those laws require a jury trial, whereas prosecutions for offenses carrying terms of imprisonment of six months or less do not.  *See Cheff v. Schnackenberg*, 384 U.S. 373, 379-80 (1966); *accord Lewis v. United States*, 518 U.S. 322, 323-24 (1996).

Here, there is no such detailed line-drawing.  There is no effort to differentiate between variants of behavior with respect to stolen property and to provide differences in punishment based on those variants.  There is only a single line, drawn at $1,000, differentiating felonies from misdemeanors.  This hardly suggests that Congress intended to exclude the application of state law, and thus require the government to bring charges bearing punishment of up to one year in prison for even the most minor of thefts.

For the foregoing reasons, the defendant's motion to dismiss the charge brought under the Assimilative Crimes Act is denied.

## II.  THE MOTION TO SUPPRESS

At the hearing on April 3, the court determined that the defendant had adequately raised a factual dispute concerning the context in which statements he allegedly made while in custody such that an evidentiary hearing would be required on the admissibility of those statements.  The court also determined, however, that the defendant's declaration did not adequately raise any factual disputes to require an evidentiary hearing concerning the events that took place when law enforcement personnel first approached him.  The court identified the problem for the defendant and provided the defendant with a further opportunity to submit a declaration that would raise a factual dispute concerning those events as they relate to the admissibility of evidence obtained during that encounter.  The defendant has submitted a further declaration.  Upon review of that declaration, the court concludes that the defendant has (barely) raised a factual issue concerning the basis for Officer Walsh's detention of the defendant, which the government concedes amounted to a *Terry* stop

requiring reasonable suspicion.  *See generally Terry v. Ohio*, 392 U.S. 1, 20-21 (1968).  Accordingly, at the evidentiary hearing scheduled to commence immediately prior to the trial on April 26, 2012 the court will hear evidence concerning the factual basis that gave rise to reasonable suspicion to stop the defendant and the circumstances surrounding any statements made by the defendant after he was placed under arrest which the government will seek to introduce in evidence at the trial.

## CONCLUSION

For the foregoing reasons, the defendant's motion to dismiss the charge under the Assimilative Crimes Act is denied, and the motion to suppress evidence remains under consideration pending the evidentiary hearing.

**SO ORDERED:**

*Viktor V. Pohorelsky*
VIKTOR V. POHORELSKY
United States Magistrate Judge

Dated:     Brooklyn, New York
            April 16, 2012